UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

QBE UNDERWRITING LIMITED ON                    CIVIL ACTION
ITS OWN BEHALF AS THE SOLE
MEMBER OF LLOYD'S OF LONDON
SYNDICATE 1036

VERSUS                                         NO: 23-3176

TAYLOR ENERGY CO., LLC                         SECTION: "A" (2)

## ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) (Rec. Doc. 17)** filed by the defendant, Taylor Energy Co., LLC. The plaintiff, QBE Underwriting Limited, opposes the motion. The motion, submitted for consideration on October 11, 2023, is before the Court on the briefs without oral argument. For the following reasons, the motion is GRANTED.

### I.    Background

QBE Underwriting Limited ("QBE") has brought this declaratory judgment action against its insured, Taylor Energy Co., LLC ("Taylor"). QBE asks this Court to determine that "no coverage is owed" under nine (9) annual policies spanning from December 2009 to December 2018, that provide coverage to Taylor under the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701, *et seq.* The damages relate to losses sustained when Hurricane Ivan arrived in 2004 causing catastrophic damage to Taylor's offshore MC-20A platform, which toppled and ruptured several of its oil wells causing the discharge of oil to commence from the MC-20 site. As the lessee of the MC-20 site, Taylor was

designated by the United States Coast Guard ("USCG" or at times "the Government" or "the United States") as "the responsible party" under OPA for removal costs and damages.

Taylor litigated coverage with the underwriters of its 2004 OPA policy and that litigation ended with a confidential settlement agreement. Unfortunately in 2018, despite mitigation efforts, the USCG determined that some of the subsea wells at the MC-20 site were continuing to actively discharge oil, which the USCG maintains continues today. The USCG maintains that since the 2004 catastrophe there has been an ongoing discharge of oil and gas in the vicinity of the northwest corner of the MC-20A platform's current location.

Through various lawsuits filed in this district and others between 2004 and 2021, Taylor and the United States litigated Taylor's responsibility for the spill, the options for containing ongoing discharges of oil, the options for remediating the soil at the MC-20 site, and Taylor's decommissioning obligations.

In December 2021, Taylor and the United States entered into a consent decree to resolve all claims between Taylor and the Government regarding Taylor's OPA liabilities for the MC-20 incident. QBE was not a party to the consent decree nor was it involved in the negotiations leading up to it.

Given the continuing discharge of oil at the MC-20 site, in December 2022 the USCG sent letters to QBE demanding the payment of the $35 million limit for all nine OPA policies issued to Taylor between 2009 and 2018. QBE maintains for numerous reasons that these policies do not cover any of the costs related to the MC-20 incident,

and QBE seeks a declaration that none of the policies provide coverage for removal costs. During the relevant policy periods, Taylor reported no incidents to QBE and Taylor made no claims. In fact, Taylor has never made a claim relating to the MC-20 incident against any of the nine OPA policies at issue in the complaint. Yet Taylor is the sole defendant against whom declaratory relief is being sought.

In response to QBE's complaint, Taylor has filed a motion to dismiss arguing that QBE's declaratory judgment action should be dismissed because the complaint fails to allege an Article III case or controversy thereby depriving the Court of jurisdiction. Taylor stresses that it has never made a claim against any of the policies at issue or sought coverage under those policies. According to Taylor, QBE's dispute is with the Government and not with Taylor. Taylor posits that QBE is seeking self-serving declaratory relief and rulings under its policies—relief and rulings that would actually constitute an advisory opinion—to use as ammunition against the Government under the guise of a non-existent controversy with Taylor.

## II.   Discussion

At the outset, QBE correctly points out that Taylor's case or controversy arguments, while raised ostensibly under Rule 12(b)(6), are actually jurisdictional arguments that go to subject matter jurisdiction, not to whether the allegations state a claim for relief. Of course, it is of no moment that Taylor has brought its motion to dismiss under Rule 12(b)(6) because regardless of the procedural label used, and regardless of whether the parties even question it themselves, a federal court must examine its jurisdiction, *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th

Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998));

*Orix Credit Alliance, Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir. 2000) (citing *United*

*Trans. Union v. Foster,* 205 F.3d 851, 857 (5th Cir. 2000)), and dismiss an action when

the statutory or constitutional power to adjudicate it is lacking, *Walmart Inc. v. U.S. Dep't*

*of Just.,* 21 F.4th 300, 307 (5th Cir. 2021) (citing *Home Builders Ass'n v. City of*

*Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998)).

      The jurisdiction of federal courts is limited by the Constitution to actual cases or

controversies. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 337 (2016), *as revised* (May 24,

2016) (citing U.S. Const. art. I, § 2). The doctrine of standing to sue derives from the

Constitution's case-or-controversy requirement, *id.* at 340, and serves to enforce it,

*DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342 (2006) (citing *Elk Grove Unified*

*School Dist. v. Newdow,* 542 U.S. 1, 11 (2004)). The "core component" of the

requirement that a litigant have standing to invoke the authority of a federal court "is an

essential and unchanging part of the case-or-controversy requirement of Article III." *Id.*

(quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)); *Louisiana Fair Hous.*

*Action Ctr., Inc. v. Azalea Garden Properties, LLC,* 82 F.4th 345, 350 n.2 (5th Cir. 2023)

(citing *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 733 (2008)).

      To establish standing under Article III of the Constitution, a plaintiff must

demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized,

and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the

injury would likely be redressed by the requested judicial relief. *Crawford v. Hinds Cnty.*

*Bd. of Supervisors,* 1 F.4th 371, 375 (5th Cir. 2021) (citing *Thole v. U. S. Bank N.A.,* 140

S. Ct. 1615, 1618 (2020)). This "triad" of injury-in-fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. *Citizens for a Better Env't*, 523 U.S. at 102–04 (citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990)); *DaimlerChrysler*, 547 U.S. at 342. The purpose of the standing doctrine is to ensure that courts do not render advisory opinions rather than resolve genuine controversies between adverse parties. *Lujan*, 504 U.S. at 598 n.4 (Blackmun, J., dissenting).

When considering a declaratory judgment action, a district court must determine whether the declaratory action is justiciable. *Orix Credit Alliance*, 212 F.3d at 895. Typically, this becomes a question of whether an "actual controversy" exists between the parties to the action. *Id.* (citing *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 27-28 (5th Cir. 1989)). As a general rule, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Id.* (citing *Middle So. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)). Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis. *Id.* (citing *Mobil Oil Corp. v. Oil, Chem. & Atomic Workers Int'l Union*, 483 F.2d 603 (5th Cir. 1973); 10B Charles Alan Wright, et al., *Federal Practice & Procedure* § 2757, at 470 (1984)).

Against this legal backdrop the Court turns its attention to QBE's declaratory judgment complaint against Taylor. Without a doubt, QBE has alleged the type of

concrete, particularized, and actual or imminent injury necessary for the first element of standing, *i.e.*, the USCG is demanding payment from QBE under the nine OPA policies issued to Taylor between 2004 and 2021. QBE is facing an existential threat of exposure to the tune of millions of dollars under those policies. QBE has alleged an injury of the type necessary to support an Article III case or controversy.

But the actual or imminent injury driving the request for declaratory relief is being caused by a non-party (the Government) and not by Taylor. The USCG has sent demand letters to QBE seeking payment under the nine OPA policies. But Taylor has not made any claims or demands under the nine policies. The allegations in QBE's complaint in no way suggest that a claim against the policies by Taylor is imminent or likely or that QBE has concerns that a claim by Taylor may be forthcoming. This is not surprising since Taylor has resolved all of its MC-20-related claims with the United States via a consent decree. It is not enough for purposes of causation that the OPA policies that the USCG is pursuing were issued to Taylor.[1]

Further, because the injury at issue in this case is not being cause by Taylor but

---

[1] To be clear, the problem in this case is not as simple as the fact that Taylor has not filed a claim because the threat of litigation, if specific and concrete, can establish the requisite controversy upon which declaratory relief can be based. *Orix Credit Alliance*, 212 F.3d at 897 (citing *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 578 (7th Cir. 1994)). The problem is that even beyond the fact that Taylor has filed no claim and made no demand against the policies, given the circumstances of this case, the likelihood of that ever occurring is both unlikely and speculative, and therefore does not present a controversy sufficiently immediate and real so as to establish an actual controversy between QBE and Taylor.

But in determining whether a justiciable controversy exists the court must take into account the likelihood that contingencies may occur. *Id.*

rather by the USCG, QBE's injury would not be redressed by the requested declaratory relief being sought against Taylor. The Government is not a party to this action and therefore would surely be free to relitigate any declaratory judgment adverse to its interests that this Court issued in its absence. *See Arconic Corp. v. Novelis, Inc.*, No. 17-1434, --- F. Supp. 3d ---, 2023 WL 3025390, at *6 (W.D. Penn. Apr. 20, 2023) (citing *Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 48 n.12 (1st Cir. 2012)); *Skyworks, Ltd. v. Centers for Disease Ctrl. & Prev.*, 542 F. Supp. 3d 719, 726 (N.D. Ohio June 3, 2021) ( citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 556 (6th Cir. 2008)). It is not enough for purposes of redressability that the court's judgment may have a persuasive effect on non-parties to other litigation. *See West Flagler Assocs., Ltd. v. DeSantis*, 568 F. Supp. 3d 1277, 1286 (N.D. Fla. 2021).

Because the injury-in-fact that requires declaratory relief was not caused by Taylor, a declaratory judgment in favor of QBE and against Taylor will not redress QBE's injury. The elements for Article III standing are not satisfied in this case, which means that there is no Article III case or controversy between QBE and Taylor to support federal subject matter jurisdiction.

That said, if QBE had sued the Government instead of Taylor then jurisdiction insofar as an Article III case or controversy is concerned would not be problematic. Of course, jurisdiction would be problematic for another reason—sovereign immunity—and the Court assumes that this is why QBE has filed this action against Taylor instead of the Government. In 2020, before Taylor settled with the Government, Taylor sued the USCG to obtain declaratory relief but Judge Guidry dismissed that action for lack of

jurisdiction, explaining why there was no waiver of sovereign immunity by the United States. *Taylor Energy Co., LLC v. United States ex rel. United States Coast Guard*, No. 20-1720, 2021 WL 1876845 (E.D. La. May 10, 2021). The same result surely would have been required in this case had QBE sued the Government instead of Taylor.

QBE argues that a case or controversy exists vis à vis Taylor because Taylor filed a Rule 12(b)(6) motion in defense to QBE's complaint which supports the contention that these parties do have adverse legal interests. This contention has no merit. The Article III case or controversy must be present in the declaratory judgment complaint itself.

Furthermore, QBE's allegations regarding Taylor's alleged contractual breaches do not provide the required Article III case or controversy because the actual or imminent injury in this case is the demand being made by the USCG. That injury was not caused by the alleged contractual breaches.

In sum, QBE has not met its burden of establishing that a justiciable, actual controversy exists between QBE and Taylor. The relief sought by QBE would not remedy its alleged injury-in-fact, which was not caused by Taylor. QBE fails to satisfy the requirements for constitutional standing, which means that this case does not present an Article III case or controversy between parties having adverse legal interests. The Court therefore lacks jurisdiction to entertain this declaratory judgment action.[2]

---

[2] Even if the Complaint established an Article III case or controversy between QBE and Taylor, the Court would exercise its discretion to decline jurisdiction over this declaratory judgment action because of the absence of the United States as a party.

Finally, QBE has requested leave to amend its complaint if the Court should determine that the motion to dismiss should be granted. The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss. *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi,* 331 F.3d 499, 508 (5th Cir.2003)).

The Court is persuaded that any amendment by QBE would be futile in light of the clear absence of an Article III case or controversy between the parties, *which is based on the facts that have been pleaded*. The finding of no Article III case or controversy is not based on the lack of sufficiently pleaded facts, and therefore cannot be cured by amendment.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) (Rec. Doc. 17)** filed by the defendant, Taylor Energy Co., LLC, is **GRANTED**. This matter is dismissed without prejudice for lack of subject matter jurisdiction.

November 2, 2023

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE